IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| P.R. TEL. CO., INC., | |
| Plaintiff, | |
| v. | CIV. NO.: 14-1062(SCC) |
| WORLDNET TELECOMM., INC., | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Puerto Rico Telephone Co. ("PRTC") seeks to vacate a final award issued after binding arbitration in favor of Defendant WorldNet Telecommunications, Inc. Docket No. 1. WorldNet opposes PRTC's motion to vacate, seeks dismissal of this case, and requests confirmation of the award. Docket Nos. 29–30. After considering all of the parties' arguments, I deny PRTC's motion and grant one of WorldNet's cross-motions, and I confirm the arbitrator's award.

## I.  Background

Though this case's procedural history is complex, the basic facts giving rise to the present dispute can be summarized quickly.

Under the Telecommunications Act of 1996, incumbent local exchange carriers ("ILECs"), like PRTC, must allow competing local exchange carriers ("CLECs"), like WorldNet, to use their networks for a reasonable price. *See* 47 U.S.C. § 251. To this end, the parties entered into an interconnection agreement in 2010 ("the 2010 ICA"). The 2010 ICA was the result of bargaining between the parties and, where the parties could not agree, arbitration by the Puerto Rico Telecommunications Regulatory Board ("the Board"). The Board furthermore approved the full 2010 ICA. The 2010 ICA contains an expedited dispute resolution provision providing that when the parties have a dispute under the 2010 ICA, either party may seek expedited resolution by the American Arbitration Association.

At some point, a disagreement arose between WorldNet and PRTC over the proper pricing of certain facilities leased by WorldNet from PRTC ("the Disputed Facilities"). When the parties could not resolve the disagreement themselves,

WorldNet filed, on May 9, 2012, a demand for arbitration. PRTC tried to enjoin the arbitration in Commonwealth court, but it ultimately lost that fight.[1] It then objected, within the arbitration, to the arbitrator's jurisdiction, and it lost that argument as well.

Arbitration finally began on June 6, 2013, more than a year after the demand for "expedited" resolution had been filed. After briefing and two days of hearings, the arbitrator released his Final Award on October 14, 2013. The Final Award found in favor of WorldNet in all respects. The arbitrator subsequently rejected PRTC's motion to modify the award. PRTC filed its motion to vacate the Final Award on January 24, 2014, 92 days after the Final Award.

## II.   Initial Matters

Before discussing the merits of the motion to vacate, I will discuss—and reject—some preliminary objections that World-Net has raised to PRTC's motion.

---

**1.**   The Court of First Instance granted an injunction, but it was eventually reversed by the Court of Appeals. PRTC unsuccessfully sought review of the Court of Appeals' order.

### A. PRTC's motion is not untimely.

The Federal Arbitration Act ("FAA") requires that a motion to vacate be "served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The statute further provides that where the "adverse party is a resident of the district within which the award was made, such service shall be made" as if one were serving a motion. *Id.* But if the party is not a resident of that forum, the FAA requires service be made as if one were serving process. *Id.* Thus, what constitutes "service" under the FAA varies depending on the residency of the party to be served: where the party is a resident, the motion may be served as a motion; where the party is a non-resident, it must be served like a complaint. *See, e.g., Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 125 (D.D.C. 2010) (recognizing that § 12 "creates separate service requirements for parties who reside in the district and those who reside elsewhere"); *cf. Escobar v. Shearson Lehman Hutton, Inc.*, 762 F. Supp. 461, 463 (D.P.R. 1991) (holding that where adverse party was a resident of Puerto Rico, § 12 was satisfied by serving that party through the mail).

In support of its argument, WorldNet cites three cases,

none of which is clearly on point. *See* Docket No. 20, at 16 n.24. To be sure, each of these cases dismisses motions to vacate arbitration awards on the grounds that the movant failed to timely serve the adverse party with a summons. *See Grosser v. Merril Lynch, Pierce, Fenner & Smith Inc.*, Civ. No. 07-672, 2007 WL 4365385, at *4 (N.D. Ill. Dec. 13, 2007); *Jason v. Halliburton Co.*, Civ. No. 02-1593, 2002 WL 31319945, at *3 (E.D. La. Oct. 15, 2002); *Carmel v. Circuit City Stores, Inc.*, Civ. No. 99-240, 2000 WL 1201891, at *3 (E.D. Pa. Aug. 22, 2000). What each lacks, however, is any indication that the adverse party was a resident of the forum state. Without that information, there is no reason to think that the courts were applying the rule that WorldNet asks to be applied here.[2]

---

**2.** Notably, PRTC cites several cases that reject the rule WorldNet advocates. *See, e.g., Day & Zimmerman, Inc. v. SOC-SMG, Inc.*, Civ. No. 11-6008, 2012 WL 5232180, at *4 (E.D. Pa. Oct. 22, 2012) (permitting service of non-resident by email, where parties had regularly communicated by email during the arbitration proceedings); *Scandanavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 732 F. Supp. 2d 293, 305 (S.D.N.Y. 2010) (holding that motion to vacate was timely, despite failure to serve a summons on non-resident party, because the parties had consented to personal jurisdiction), *overruled on other grounds*, 668 F.3d 60 (2d Cir. 2012); *Silicon Power Corp. v. Gen. Elec. Controls, Inc.*, Civ. No. 08-4331, 2009 WL 1971390, at *3–4 (E.D. Pa. July 7, 2009) (holding that resident could be served pursuant to rules for service of motion); *The Home Ins. Co. v. RHA/Pa. Nursing Homes, Inc.*,

WorldNet does not dispute that it is a resident of Puerto Rico, and the Final Award was made in Puerto Rico, *see* Docket No. 3-2, at 24. Of course, I am sitting in the United States District Court for the District of Puerto Rico. The FAA is exceedingly clear about how WorldNet was to be served under such circumstances, and that service was timely accomplished. WorldNet has advanced no compelling reason why more is required than the statute prescribes, and so WorldNet's timeliness argument is rejected.

### B. PRTC has not waived its objections to the arbitrator's jurisdiction.

WorldNet argues that PRTC has waived its right to object to the arbitrator's jurisdiction because it "has spent the last two years challenging (unsuccessfully) the jurisdiction of the arbitrator in this case at every level of the Puerto Rico courts." Docket No. 20, at 19. The facts, briefly, are these. After the arbitrator released the Final Award, PRTC sought to enjoin that award in the Court of First Instance. PRTC made various arguments to that court, including the arguments that it repeats here: that the FCC and the Board have exclusive or

---

113 F. Supp. 2d 633, 635 n.10 (S.D.N.Y. 2000) (holding that the FAA does not require a summons).

primary jurisdiction over this dispute, so the arbitrator was without jurisdiction to act. The Court of First Instance granted PRTC's injunction request, but it did not do so on primary/exclusive jurisdiction grounds. Instead, it held that under the language of the 2010 ICA, the parties had not agreed to arbitrate pricing disputes. *See* Docket No. 39-2, at 19–20.

When WorldNet appealed, PRTC did not persist in its jurisdictional objections before the court of appeals. According to WorldNet, this means that PRTC abandoned those objections and is "collaterally estopped" from making those arguments to this Court. Docket No. 20, at 19. But WorldNet's arguments misunderstand the law of collateral estoppel, which requires that the issue to estopped have been "actually litigated" and "determined by a valid and binding final judgment." *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 90 (1st Cir. 2007). Here, of course, the jurisdictional objections were not determined by either of the Commonwealth courts. Accordingly, there is no collateral estoppel. Neither has PRTC abandoned these arguments, as they were not properly before the court of appeals; rather, because the trial court decided the matter on other grounds, the issues were narrowed on appeal. PRTC properly restricted its arguments on appeal to scope of

the trial court's opinion.

PRTC has not abandoned its arguments, and it timely served WorldNet with the motion to vacate. As such, I consider the merits of the parties' motions below.

### III.    PRTC's Motion to Vacate

PRTC's motion to vacate focuses principally on the arbitrator's supposed lack of jurisdiction. In effect, PRTC argues that the questions posed to the arbitrator were of the sort that were in the exclusive or primary jurisdiction of the FCC and the Board, and so they could not properly be presented for arbitration. In the alternative, PRTC makes several less expansive arguments against the arbitration award. Below, I discuss each in turn.

#### A. Background

Before delving into the merits, it is useful to give some brief background on the relationship between WorldNet and PRTC, as well as the dispute that brought them to arbitration in the first place. The 2010 ICA defines the terms and rates by which WorldNet may lease facilities from PRTC. Simplified, the ICA provides that these facilities will be leased under two regimes. First is under a tariff framework, which exists outside of the

2010 ICA.[3] Second is under the 2010 ICA itself, which, pursuant to the Telecommunications Act, provides special pricing (known as TELRIC) for interconnection and unbundled network elements ("UNEs"). The dispute between the parties concerns whether certain facilities are covered by the first or second of these regimes.

The Disputed Facilities are "DS3 tie cables," which are "relatively short, physical length[s] of coaxial cable that connect[] two pieces equipment." Docket No. 3-2, at 3–4. These cables are located within PRTC buildings called "central offices" and connect port-of-termination ("POT") bays to Digital Cross Connect ("DCC") ports. *Id.* at 4. According to WorldNet, the Dispute Facilities are UNEs, and so they are to be priced under the 2010 ICA; according to PRTC, they are "entrance facilities" priced according to the tariff.[4] *See id.*

---

**3.**   PRTC calls the ICA pricing regime "a narrow exception to the tariff regime." Docket No. 4, at 4. This characterization is belied by the 2010 ICA itself, which makes TELRIC pricing the default "unless otherwise specified." Docket No. 3-2, at 17.

**4.**   The difference in price between these two regimes is enormous. If the Disputed Facilities were UNEs, WorldNet would pay just $1.31 per month for the cables and $48.10 per month for the DCC ports. If they were entrance facilities, PRTC would be entitled to $334.89 per month. *See* Docket No. 3-2, at 4.

The arbitrator found in favor of WorldNet, and its analysis was extraordinarily straightforward. First, he noted that Section 1.1 of the Pricing Attachment to the 2010 ICA "defines the Unbundled Dedicated Transport UNE" as "comprising three pieces, including a 'Dedicated Transport Port.'" *Id.* at 17–18. He then noted that Section 1.1.3 of the same Attachment defined "Dedicated Transport Port" as "(1) the DCC Port at each end of the Unbundled Dedicated Transport, and (2) the tie cables between the DCC Port and the POT Bay." *Id.* at 18. Thus, the 2010 ICA's text established that the Disputed Facilities—"i.e., the tie cables between the POT bay and the DCC port and the DCC port itself"—were "part of the Unbundled Dedicated Transport UNE." *Id.* The 2010 ICA therefore provided that the Disputed Facilities were to be priced at TELRIC rates. *Id.*[5]

The basis for arbitrating the billing conflict was § 29.1.4 of the 2010 ICA, which provides for expedited dispute resolution. The provision also provides that the arbitrator would decide questions of arbitrability. The arbitration clause applies

---

**5.** The arbitrator went on to explain why PRTC's argument—that the Disputed Facilities were governed by the tariff—was textually wrong. *See* Docket No. 3-2, at 18–20.

generally to "matters arising under" the 2010 ICA. These provisions were agreed to by the parties and approved by the Board.

## B. The Law of Primary Jurisdiction

PRTC argues that the arbitrator's decision violated the primary jurisdiction doctrine and is therefore void. That doctrine was developed to ensure "consistent and coherent policy" as courts interacted with administrative agencies. *Port of Boston Marine Terminal Assoc. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68 (1970). The doctrine applies "to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). In such circumstances, the doctrine "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Id.* The doctrine thus seeks "to avoid the possibility that a court's ruling might disturb or disrupt the regulatory regime of the agency in question." *Am. Auto. Assoc. v. Mass. Dep't of Envtl. Prot.*, 163 F.3d 74, 81 (1st Cir. 1998). It likewise recognizes a "goal of national uniformity in the interpretation and application of a federal regulatory regime," which "is furthered by permitting

the agency that has primary jurisdiction over the matter in question to have a first look at the problem." *Id.* Application of the primary jurisdiction doctrine is most appropriate where the matter to be decided is at the heart of the agency's competency or concerns intricate or technical facts requiring agency expertise. *Id.* (citing *Massachusetts v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 992 (1st Cir. 1995)). Courts have recognized the doctrine as being applicable to arbitral forums in the same way as it would apply to courts. *See, e.g.*, *A/S Ivarans Rederi v. United States*, 895 F.2d 1441, 1445 (D.C. Cir. 1990) ("Private regulated parties cannot agree to waive the subject matter jurisdiction of the agency charged with the statutory responsibility to insure that parties implement agreements as approved by and filed with that agency. And just as assuredly, private parties may not agree to confer such powers on an arbitration panel.").

## C.  PRTC has contractually waived its right to object to arbitration of this dispute.

As an initial matter, I find that PRTC has waived its right to challenge the arbitrability of the present dispute with WorldNet. It is well-settled that "the doctrine of primary jurisdiction is not, despite its name, jurisdictional." *Baltimore & Ohio Chicago Terminal R. Co. v. Wisc. Cent. Ltd.*, 154 F.3d 404, 411

(7th Cir. 1998). On the contrary, it "presupposes" that jurisdic-
tion exists. *Id.* Because it is not a jurisdictional doctrine, it may
be waived. *See id.*; *see also Nw. Airlines, Inc. v. Cnty. of Kent,
Mich.*, 510 U.S. 355, 366 n.10 (1994) (declining to consider
primary jurisdiction, because the parties had not raised the
issue). And one way to waive a non-jurisdictional objection to
the arbitrability of a dispute is by contractually agreeing to
arbitrate that dispute, as PRTC did here in the 2010 ICA. *Cf.
id.* (holding that the primary jurisdiction had been waived "by
the agreement to submit to arbitration issues that the doctrine
would otherwise assign to an administrative agency"); *see also
CSX Transp. Co. v. Novolog Bucks Cnty.*, 502 F.3d 247, 253 (3d
Cir. 2007) (holding that primary jurisdiction arguments are
waivable); *Serv. Employees Int'l Union v. St. Vincent Med. Ctr.*,
344 F.3d 977, 983 (9th Cir. 2003) (holding that, notwithstanding
primary jurisdiction argument, dispute was arbitrable where
contract contained a broad arbitration provision); *Frontier
Commun. of the Carolinas LLC v. Duke Energy Carolinas, LLC*, Civ.
No. 13-791, 2014 WL 4055827, at *5 (E.D.N.C. Aug. 15, 2014)
(holding, under similar circumstances, that "the broad arbitra-

tion provision . . . renders arbitrable the instant dispute").[6]

### D.  The question of whether to refer this case to the Board or FCC was for the arbitrator, not this Court.

Even if PRTC had not waived its primary jurisdiction objection to the arbitration, its motion to vacate would be denied because the question of whether that doctrine required referral to the Board or FCC was for the arbitrator, not this Court. Faced with broad arbitration provisions, Courts routinely treat primary jurisdiction as a threshold merits question to be addressed by the arbitrator. *See, e.g., Frontier Commun.*, 2014 WL 4055827, at *7 (treating primary jurisdiction as a threshold merits question, to be decided by the arbitrator in light of the broad arbitration clause); *Global Crossing Telecomm., Inc. v. 3L Commun. Mo., LLC*, Civ. No. 13-885, 2013 WL 3893321, at *4 (E.D. Mo. July 26, 2013) (refusing to consider primary jurisdiction arguments where dispute was arbitrable);

---

**6.**  PRTC argues, without citing any authority, that "[w]hether the parties agreed to an arbitration clause is irrelevant under the legal doctrine establishing that private parties may not refer to arbitration matters that fall within the primary jurisdiction of regulatory agencies." Docket No. 35, at 7. The cited cases stand for precisely the opposite proposition, however, and given the non-jurisdictional nature of the doctrine on which PRTC relies, I find those cases' reasoning convincing.

*Natural Gas Pipeline Co. of Am., LLC v. 3.39 Acres of Land, More or Less, in Cameron Parish, La.*, Civ. No. 09-724, 2009 WL 2135151, at *4 (W.D. La. July 10, 2009) (referring case to arbitration where primary jurisdiction argument had been raised against the arbitrator's jurisdiction); *S. Strauss, Inc. v. United Food & Com. Workers Union, Loc. 342*, 503 F. Supp. 2d 567, 576 (E.D.N.Y. 2007) (referring case to arbitration and finding that questions of arbitrability are "not within the 'special competence' of the" agency); *N.Y. Cross Harbor R.R. Terminal Corp. v. Consol. Rail Corp.*, 72 F. Supp. 2d 70, 82 (E.D.N.Y. 1998) (treating primary jurisdiction as a threshold merits question, to be decided by the arbitrator in light of the broad arbitration clause). Especially given that the parties in this case specifically agreed that the arbitrator should determine questions of arbitrability, I find that the question of whether to refer this matter for initial adjudication by the Board or FCC was correctly in the purview of the arbitrator. The arbitrator denied precisely such a jurisdictional objection, and that should have settled the matter.

### E.  The primary jurisdiction doctrine, even if applicable, was not a bar to arbitration in this case.

Central to PRTC's argument in this Court is the idea that

there is some fundamental incompatibility between agency primary jurisdiction and arbitration. For this proposition, it relies largely on two cases from the D.C. Circuit, *A/S Ivarans Rederi* and *Duke Power Co. v. F.E.R.C.*, 864 F.2d 823 (D.C. Cir. 1989). In fact, neither of these cases support PRTC's arguments. To the contrary, they and other cases confirm that arbitration may be a useful tool even for solving cases at the heart of agency competency.

In *Duke Power*, Duke Power appealed a FERC order against it on the grounds that an arbitration clause mandated arbitration before FERC could consider the dispute. *See id.* at 824–25. The D.C. Circuit rejected this argument. It found that FERC had "continuing regulatory jurisdiction" over the dispute under the parties' agreement. *Id.* at 829. It further found that the dispute was within FERC's primary jurisdiction. *Id.* As such, it held that its "acceptance for filing of an agreement that contains an arbitration clause does not legally disable [it] from resolving disputes at the core of its enforcement mission." *Id.* That said, the court made clear that FERC was *not* prohibited from sending the dispute to arbitration. To the contrary, while it was "not *required* to submit the dispute to arbitration despite a mandatory arbitration clause in the agreements . . . *it may, in*

*its discretion, do so.*" *Id.* at 830 (emphasis added). Thus, under *Duke Power* an administrative agency may ignore an arbitration clause and consider matters within its core competency, but it is not required to do so. Notably, FERC has done exactly this. *See, e.g., N.C. E. Mun. Power Agency v. Carolina Power & Light Co.,* 45 FERC ¶ 61,487, at *62,518 (Dec. 22, 1988) ("Where a filing concerns a dispute that the parties have agreed to arbitrate and where arbitration will not prejudice any party and is not contrary to the public interest, we will generally give effect to the parties' intentions that such a dispute be submitted for arbitration."), *rehearing denied,* 46 FERC ¶ 61,181, at *3–4 (Feb. 22, 1989) (interpreting *Duke Power* as authorizing such a procedure).

The D.C. Circuit's opinion in *A/S Ivarans Rederi* is to the same effect. There, the Circuit held that an administrative agency, the Federal Maritime Commission ("FMC"), could "choose to approve the parties' desire to submit their claims to arbitration first." 895 F.2d at 1446. Like FERC, the FMC regularly required parties to honor agreed and approved arbitration clauses before seeking FMC review. *See id.* ("The FMC, for its part, has apparently taken a consistent view that it will require parties to submit to arbitration when an ap-

proved contract has a mandatory arbitration provision."). According to the Circuit, such an arrangement was in no sense problematic. *Id.*; *see also A/S Ivarans Rederi v. United States*, 938 F.2d 1365, 1367 (D.C. Cir. 1991) (explaining that when a conflict between regulated parties "implicate the agency's public duties, the agency can decide, *in its judgment*, whether to send the parties first to arbitration" (emphasis added)).

Federal policy strongly favors arbitration, and there is no automatic incompatibility between agency expertise and arbitration. *Cf. Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987) (explaining that statutory claims are arbitrable unless there is explicit congressional intent to the contrary, which 'will be deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632–37 (1987)) (internal citations omitted)). This is true even of matters at the heart of the agency's mission, at least when the agency has consented to have such matters arbitrated. As such, in the years following *Duke Power* and *A/S Ivarans Rederi*, many federal courts have approved arrangements by which regulated parties resort to private arbitration in the first instance.

*See, e.g., Black v. Surface Transp. Bd.*, 476 F.3d 409, 413 (6th Cir. 2007) (approving agency practice of "requiring parties initially to submit disputes to arbitration"); *Assoc. of Am. Railroads v. Surface Transp. Bd.*, 162 F.3d 101, 107 (D.C. Cir. 1998) (refusing "to 'mandate that the [agency] adjudicate disputes that it properly determines to be arbitrable'" (quoting *Bhd. of Locomotive Eng'rs v. I.C.C.*, 808 F.2d 1570, 1579 n.75 (D.C. Cir. 1987))); *see also Emps. of Butte, Anaconda & Pac. Ry. Co. v. United States*, 938 F.2d 1009, 1013–14 (9th Cir. 1991) (reviewing agency's review of an arbitration award); *Hotel & Rest. Emps. Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 567–68 (2d Cir. 1993) (approving arbitration of matters within the NLRB's primary jurisdiction).

Here, WorldNet and PRTC agreed to arbitrate disputes under the 2010 ICA, and the Board approved precisely that arrangement. The cases above—especially *Duke Power* and *A/S Ivarans Rederi*—show that the Board may approve such arrangements and that they may be enforced. Accordingly, even claims within the Board's primary jurisdiction were subject to arbitration under the 2010 ICA.[7]

---

7.  PRTC also makes a claim that part of the arbitrator's award decided matters within the primary jurisdiction of the FCC, which did not

## F.   The core dispute between WorldNet and PRTC is not within any agency's primary jurisdiction.

Even if PRTC's motion were not to be denied for all of the reasons stated above, it would nonetheless be denied on the merits for the simple fact that PRTC's dispute with WorldNet is not within the primary jurisdiction of either the FCC or the Board. The mere fact that the parties here are regulated and that the dispute touches on areas of agency purview is not alone dispositive.

Primary jurisdiction is a prudential doctrine that requires a forum to decline jurisdiction only insofar as it is necessary to preserve the core goals, policies, and expertise of the relevant administrative agency. *See Am. Auto. Mfrs.*, 163 F.3d at 81. Thus, matters should be referred to agencies when they implicate the agency's core competencies, such as with challenges to the "validity" or a rate or tariff. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304 (1976); *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998). Similarly, the "reasonable-

---

explicitly approve the 2010 ICA. However, the other bars to consideration of PRTC's primary jurisdiction arguments, discussed above, still apply. And even if they are considered, they would be denied for the reasons discussed below.

ness" of tariffs is an issue "confide[d] to the agency." *Wisc. Cent.*, 154 F.3d at 410. But where the claim touches on the agency's realm of expertise but does not, for example, "require determining the validity of a tariff," referral is not necessary. *Cahnmann*, 133 F.3d at 488 (citing *In re Long Distance Telecomm. Litig.*, 831 F.2d 627, 633-34 (6th Cir. 1987)). Likewise, construction of a tariff or other regulatory document does not require referral unless terms in it "are used in a peculiar or technical sense, [or] where extrinsic evidence is necessary to determine their meaning or proper application, so that 'the inquiry is essentially one of fact and discretion in technical matters.'" *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 65–66 (1956) (quoting *Great N. Ry. Co. v. Merchants' Elevator Co.*, 259 U.S. 285, 291 (1922)). Thus, "[a]n issue of tariff interpretation that does not" involve "highly technical matters central to the agency's mission and expertise" need not be referred to the agency. *Wisc. Cent.*, 154 F.3d at 411.

In light of these principles, courts have refused to refer cases to administrative agencies when they deal with "compliance with an administrative standard, rather than whether the standard was reasonable." *Madison Cnty. Mass Transit v. Hanfelder*, Civ. No. 00-179, 2001 WL 775977, at *3 (S.D. Ill. Feb.

7, 2001) (citing *United States v. Elrod*, 627 F.2d 813, 818 (7th Cir. 1980)); *see also Elrod*, 627 F.2d at 818 ("The doctrine is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule."). Courts need not refer to administrative agencies when the question presented "simply requires [them] to engage in an activity—statutory interpretation—that is the daily fare of federal judges." *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006). Courts may also consider actions to enforce a tariff, even when they involve (non-technical) fact finding. *Nat'l Commc'ns Assoc. v. Am. Tel. & Telegraph Co.*, 46 F.3d 220, 223 (2d Cir. 1995). They should, however, refer interpretation and enforcement actions to the agency when they involve "policy considerations." *S. New Eng. Tel. Co. v. Global NAPs, Inc.*, Civ. No. 304CV2075JCH, 2005 WL 2789323, at *7 n.7 (D. Conn. Oct. 26, 2005). The same rules apply to interconnection agreements. *See Ill. Bell Tel. Co., Inc. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 596 (7th Cir. 2008) ("[W]e do not think the court need refer all disputes over an interconnection agreement to the state commission, only those where the dispute raises a genuine policy issue the resolution of which has been confided by the Telecommunications Act to the state

commissions."). Of course, whichever matters may be heard by a court may also be heard by an arbitrator, so long as the parties have agreed. *See Wisc. Cent.*, 154 F.3d at 411 ("An issue of tariff interpretation that does not involve [technical] matters may . . . be decided by the court without a reference to the agency. And if by a court, why not by an arbitrator?").

Before turning to the present dispute, it is useful to see how courts have considered specific requests for agency referral in the telecommunications context. For that, I turn to a few of the cases that PRTC has cited in support of its position, the most useful of which, to my mind, is *Sancom, Inc. v. AT&T Corp.*, 696 F. Supp. 2d 1030 (D.S.D. 2010). *Sancom* was a tariff enforcement and interpretation action, and so the court noted that it was presumptively within its purview. *Id.* at 1036. Nonetheless, it granted a motion to refer the matter to the FCC because interpretation of the tariff "require[d] interpretation of words used in a technical sense," including terms not defined by the tariff. *Id.* at 1037; *see also id. at* 1038 (noting that the dispute might involve "unique terms not available under [the] tariff"). It also required "consideration of extrinsic evidence relating to topics within the expertise of the FCC." *Id.* at 1037. The court specifically noted that determining whether certain providers

were "end users" would "embroil the court in the technical aspects of switched access services." *Id.* The court also noted that there were many other cases considering the same question at that time, and so referral to the FCC would "promote uniformity and consistency within the particular field of regulation." *Id.* at 1039; *see also id.* at 1040 (noting "that the risk of inconsistent and contradictory rulings on the tariff application issue [was] great"). Finally, the court explained that the "FCC's expertise [was] necessary to determine whether [the plaintiff was] entitled to compensation for services not covered by its tariffs." *Id.* at 1040. Thus, the *Sancom* found that invocation of the primary jurisdiction doctrine was proper where the dispute (1) required the application of undefined, technical terms; (2) was likely to impair national uniformity by leading to conflicting rulings; and/or (3) involved the pricing of services outside of a tariff (or, logically, an ICA).

The decisions in *Pac-West Telecomm* and *Global Crossings* are to a similar effect. *Pac-West* was a tariff collection action. *See Pac-West Telecomm, Inc. v. MCI Commc'ns Servs., Inc.*, Civ. No. 10-1051, 2011 WL 1087195, at *1 (E.D. Cal. March 23, 2011). The court noted that uniformity concerns were implicated by the FCC's recent notice of proposed rulemaking on the subject

matter of the dispute. *Id.* at *2. The action also required the interpretation of technical terms and, crucially, called into question the validity of a tariff. *Id.* at *2–3. The court accordingly referred the matters to the FCC. *Id.* at *3. *Global Crossing* was also a tariff action. *See Global Crossing Telecomm., Inc. v. nTelos Tel. Inc.*, Civ. No. 11-503, 2012 WL 4459946, at *1 (W.D. Va. June 1, 2012). In that case, however, the parties could not even agree as to what the question was, and the court explained that answering *that* question would "necessitate a factual determination of precisely *what* Global Crossing ordered from . . . nTelos and Verizon." *Id.* at *3. This question, as well as the other questions in the case, would turn on "questions of industry custom and practices" that the FCC was uniquely situated to consider. *Id.* at *3. Thus, questions of validity, industry custom and practice, and uniformity are properly put before the administrative agency in the first instance.

PRTC's brief expends considerable effort trying to find evidence of these forbidden determinations in the Final Award, but in the end, its brief is all smoke and mirrors. For example, PRTC suggests that the arbitrator "made determinations regarding the technical characteristics of entrance facilities," *see*

Docket No. 4, at 13, but this mostly amounted to a review of how the 2010 ICA itself defined that term, Docket No. 3-2, at 11–12.[8] Similarly—and more importantly—the arbitrator's discussion of the Disputed Facilities was grounded almost entirely in the 2010 ICA's language. *See id.* at 17–18.[9]

PRTC also suggests that the arbitrator made "determinations of genuine policy issues." Docket No. 4, at 14. This is simply incorrect. It is true, as PRTC notes, *see* Docket No. 4, at 12, that the Final Award considered how courts and regulatory agencies had defined the term "entrance facilities," *see, e.g.,* Docket No. 3-2, at 16–17, but that fact actually cuts against PRTC's argument because it makes clear that arbitrator was

---

8. The arbitrator did make factual findings regarding the definition of a "cable entrance facility," *see* Docket No. 3-2, at 12, but these facts were not strictly necessary to the arbitrator's conclusion. In any case, the facts found do not seem so technical or important that they alone would put this matter in the agency's primary jurisdiction.

9. As PRTC points out, the arbitrator did find that the "Dispute Facilities are the only way WorldNet can connect its network to PRTC's loops and interoffice transport." Docket No. 3-2, at 19. However, neither PRTC nor the Final Award give any indication that this finding was even disputed. Moreover, the finding was relevant only to the Final Award's explanation of why PRTC's tariff argument was wrong, not to its purely textual explanation of why the Disputed Facilities were UNEs.

following—not making—policy determinations. Moreover, the arbitrator's determinations that the Disputed Facilities were UNEs and whether the POT bay was the demarcation point between WorldNet's and PRTC's networks were made solely on the basis of the 2010 ICA's text. *See id.* at 10–11, 17–18. PRTC also argues that the arbitrator spent "three paragraphs . . . discuss[ing] the regulatory implications of treating the Disputed Facilities as entrance facilities." Docket No. 4, at 14. This misconstrues the Final Award. The cited paragraph explains that PRTC's interpretation would render meaningless significant portions of the 2010 ICA, *see* Docket No. 3-2, at 19–20; this is an application of contract interpretation principles, not a determination of policy implications.

Finally, PRTC objects to the arbitrator "resolv[ing] the question of whether the Disputed Facilities fell within the language of PRTC's tariff or the" 2010 ICA, because this is the "type[] of genuine public policy determination[] over which federal and state regulators have primary jurisdiction." Docket No. 4, at 15–16. At last, PRTC correctly describes the Final Award, but it gets the law wrong. As I have said, the Final Award found that the Disputed Facilities were UNEs based on a straightforward reading of the 2010 ICA's language. Because

they were UNEs, the Disputed Facilities were not covered by the tariffs; this, too, was a finding based on the 2010 ICA's language. Neither of these findings, moreover, relied in any sense on public policy determinations, nor did they require the interpretation of any undefined, technical terms. Matters of construction of this sort are decidedly not within the primary jurisdiction of administrative agencies.

## G. The arbitrator did not set any rates or invalidate a tariff.

PRTC makes two final arguments regarding the arbitrator's jurisdiction, both of which require it to badly misconstrue the Final Award. First, it argues that the arbitrator "exceeded his authority and usurped the Board's exclusive jurisdiction under 47 U.S.C. § 252 when he established the specific rate to apply to" the Disputed Facilities. Docket No. 4, at 16. This argument is frivolous. The arbitrator's holding was the 2010 ICA *itself* set the rate for the Disputed Facilities; as such, there was no rate to set.

PRTC also suggests that the Final Award "invalid[ated]" a tariff. Docket No. 4, at 19. More precisely, PRTC argues that the arbitrator invalidated "*charges that were levied* by PRTC pursuant to its federal tariff," *id.* (emphasis added), but it tries to

frame this challenge within the legal context of validity challenges to tariffs themselves. *See id.* ("Challenges to the validity of a common carrier's rates or practices in a federal tariff are subject to the primary jurisdiction of the federal regulatory agencies."). I repeat myself: the Final Award determined that, based on the 2010 ICA's language, the Disputed Facilities were covered by TELRIC rates, not the tariff. This ruling had nothing to do with the "validity" of any tariff, and it invalidated *charges* under the tariff only insofar as it held that PRTC had been long overcharging WorldNet by requiring payment for the Disputed Facilities under the tariff rather than at TELRIC rates. PRTC gives away the game when it notes that validity challenges are for the FCC because they require "consideration of technical matters regarding the nature of the service at issue, and the balancing of public policy and regulatory considerations." Docket No. 4, at 20. PRTC adds that: "The Arbitrator was in no position to do so and, in fact, *did not do so*. He was thus precluded on primary jurisdiction grounds from declaring PRTC's federal tariff charges invalid." *Id.* (emphasis added). As PRTC says, the arbitrator could not—and did not—consider policy considerations, and he did not do so because he was not invalidating any tariff; he

was interpreting a contract. *Cf. Schiller*, 449 F.3d at 295 (providing that a matter is not within an agency's primary jurisdiction if it was of the sort that is the "daily fare of federal judges").

### H. This court cannot consider PRTC's argument that the arbitrator exceeded his authority in ruling on the double-billing claims.

The Final Award determined that PRTC had on various occasions double-billed WorldNet for the use of the Disputed Facilities, and it ordered that PRTC return this money. *See* Docket No. 3-2, at 13. PRTC argues that the arbitrator "exceeded his authority as a matter of contract law when" he made this order. Docket No. 4, at 21. What PRTC seems to mean is that there was a separate settlement agreement that, in its opinion, required such a claim be made in Puerto Rico state or federal court. *See id*. Noting that this argument has nothing to do with PRTC's primary jurisdiction arguments, I reject it for several reasons.

First, this is a question of arbitrability properly decided by the arbitrator, before whom it is not even clear whether this argument was raised. *See* Docket No. 20 ("[T]he arbitrator was not presented with, nor did he rule on, any dispute concerning the settlement agreement."). Second, as this was a question for

the arbitrator, it may only be vacated pursuant to the FAA's vacatur provision. *See* 9 U.S.C. § 10(a); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (holding that "the FAA operates on" an "agreement to arbitrate threshold issues" like arbitrability "just as it does on any other"). PRTC has not invoked any of the statutory bases for vacating an arbitration award, much less has it attempted to show why they apply. As such, PRTC has waived its arguments in this regard. Third, PRTC's arguments regarding the settlement agreement's applicability is too vague to be of any use; reading its motion, I am frankly unable to determine why it thinks the settlement agreement controls this question.[10] This, too, amounts to waiver.

I find that PRTC's arguments regarding the double-billing amount to an undeveloped and improper challenge to a matter that was properly before the arbitrator. I further find there is insufficient material before me to consider the merits of PRTC's

---

**10.** PRTC, for instance, cites to arbitration testimony suggesting that the agreement was the "likely" cause of the double billing. Docket No. 3-1, at 94. The other citation, also to arbitration testimony, simply states the fact that the Disputed Facilities are covered by the settlement agreement conclusorily, without citation to any particular part of the agreement. Docket No. 3-2, at 92–93.

argument. As such, I reject it.

## I.   PRTC has failed to show that the arbitrator manifestly disregarded applicable law.

For many years, courts have recognized manifest disregard for the law as a common-law grounds for vacating arbitration awards. *See Bangor Gas Co., LLC v. H.G. Energy Servs. (U.S.) Inc.*, 695 F.3d 181, 187 (1st Cir. 2012). The First Circuit has limited the applicability of this doctrine to "cases where the award conflicts with the plain language of the contract or where 'the arbitrator recognized the applicable law, but ignored it.'" *Id.* (quoting *Gupta v. Cisco Sys., Inc.*, 274 F.3d 1, 3 (1st Cir. 2001)). The First Circuit has—if in dicta, *id.*—held that manifest disregard is no longer a proper basis for vacating an arbitral award, *Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 124 n.3 (1st Cir. 2008) (citing *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008)). Nonetheless, it and courts in this district have continued to apply the doctrine as they await a more direct ruling from the higher courts. *See, e.g., Bangor Gas*, 695 F.3d at 187; *Union de Tronquistas de P.R., Local 901 v. United Parcel Serv., Inc.*, 960 F. Supp. 2d 354, 358 (D.P.R. 2013).

Recall that PRTC's position during the arbitration was that the Dispute Facilities were "entrance facilities." In the course

of making his ruling, the arbitrator recounted how the FCC and various courts had defined that term, but he ultimately determined that those definitions were "irrelevant." Docket No. 3-2, at 17. PRTC argues that by citing the FCC definition—PRTC says he "recognized the existence of the FCC rules," Docket No. 4, at 23—but ignoring them, the arbitrator manifestly disregarded the law. This argument is without any merit.

PRTC is correct that where the arbitrator knows the law but disregards it, manifest disregard may exist. *See, e.g.*, *McCarthy v. Citigroup Global Mkts. Inc.*, 463 F.3d 87, 91–92 (1st Cir. 2006). But the law "disregarded" needs to have actually been relevant to the decision. According to PRTC, "there can be no plausible claim that . . . the rules of the agency in charge of defining that very term" were irrelevant. Docket No. 4, at 23. But of course they were here, because the 2010 ICA determined the question of the Disputed Facilities' status and showed that they were not, for the purposes of that agreement's pricing provisions, entrance facilities. Given that conclusion, there was no need to consider how the FCC had defined entrance facilities. Accordingly, no manifest disregard of law exists and vacatur is improper on those grounds.

### J. Modification of the final award for a calculation error is not warranted.

PRTC's final objection to the Final Award is that it contains a calculation error that subjects it to modification. According to PRTC, it credited WorldNet $107,945.37 before the arbitration, which should be deducted from the $353,812.49 awarded to WorldNet. Docket No. 4, at 25. According to WorldNet, however, this credit is irrelevant to the damages awarded in the arbitration. *See* Docket No. 20, at 39–40. WorldNet notes that the award was calculated by taking the amount that WorldNet actually paid PRTC and subtracting from it the amount that WorldNet should have paid. *Id.* at 39. The credit, WorldNet says, was against a larger balance that PRTC claimed was owed, and that balance was nullified by a separate portion of the award. *Id.* at 39–40 (citing Docket No. 3-2, at 23 (nullifying WorldNet's tariff liability to PRTC)). From the Final Award, it is impossible to say which position is the correct one.

The FAA permits courts to modify arbitration awards where there exists "an evident material miscalculation of figures." 9 U.S.C. § 11(a). The First Circuit has not construed this language, *see Lumber Liquidators, Inc. v. Sullivan*, Civ. No. 10-11890, 2011 WL 5884252, at *2 (D. Mass. Aug. 10, 2011)

(noting lack of precedent), but the circuits that have done so seem to universally require that the alleged error be apparent from the face of the award, *see, e.g.*, *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378–79 (6th Cir. 2008) (requiring a "computational error" on the "face of the award"); *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 999 (11th Cir. 2007) (requiring the mistake to be on the face of the award); *U.S. Energy Corp. v. Nukem, Inc.*, 162 F.3d 1175, at *5 (10th Cir. 1998) (unpublished table decision) (same); *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998) (same); *see also Prestige Ford v. Ford Dealer Comp. Servs., Inc.*, 324 F.3d 391, 396 (5th Cir. 2003) (requiring that the mistake be "unambiguous and undisputed" (internal quotations omitted)), *overruled on other grounds as recognized in Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 354 (5th Cir. 2009). Here, the supposed error is far from plain, and ruling upon PRTC's claim would require the weighing of evidence, which § 11(a) does not permit. Accordingly, PRTC's request that I modify the award is rejected.

### K.  The motion to vacate must be denied.

As I have said, PRTC contractually waived its right to object to arbitration on primary jurisdiction grounds, a question that

was in any case properly raised before the arbitrator, not this Court. Furthermore, the doctrine, even if properly considered, would give PRTC none of the relief it seeks. PRTC's other arguments requesting vacatur or modification of the Final Award are similarly unavailing. As such, I must deny PRTC's motion to vacate.

## IV.    WorldNet's Motion to Confirm the Final Award

In addition to opposing PRTC's motion to vacate the Final Award, WorldNet filed a cross-motion to confirm it. Under the FAA, I "must grant" the confirmation motion unless the motion is to be "vacated, modified, or corrected." 9 U.S.C. § 9. Thus, because I have denied PRTC's motion to modify or vacate the award, and because I cannot find (nor have the parties pointed to) any other aspect of the Final Award that needs correction, confirmation is appropriate.

I note that PRTC has not opposed the motion to confirm. Instead, it filed a motion to hold it in abeyance, Docket No. 32, which was never ruled upon. But a party seeking a stay cannot simply treat its own motion as granted, and so PRTC was required to file its opposition or waive its right to submit one. Furthermore, PRTC's motion requesting that confirmation be held in abeyance is based on the pendency of its motion to

vacate, which has been denied, and its opposition to the motion to confirm would be based on the same arguments, which have been rejected.[11] *See id.* at 2–3. For this reason, WorldNet's motion to confirm the Final Award is ripe for adjudication, and it is granted.[12]

## V.  WorldNet's Other Requests

WorldNet also asks that an order of garnishment be entered against PRTC, that it be awarded pre-judgment interest, and that it be awarded costs and fees.

First, an order of garnishment is unnecessary. There is no indication that PRTC is unwilling or unable to pay a judgment of this court. Moreover, now that the award has been confirmed, WorldNet may seek execution of the Final Award. The motion for garnishment is therefore denied.

Second, WorldNet requests post-award, pre-judgment interest. According to WorldNet, such an award is governed by Puerto Rico law, namely Rule of Civil Procedure 44.3(b),

---

**11.** After WorldNet filed its hybrid opposition to the motion to vacate and cross-motion to confirm, Docket No. 20, PRTC filed a lengthy reply responding to all of the arguments therein, Docket No. 35.

**12.** I find PRTC's motion to strike and to hold the confirmation in abeyance, Docket No. 32, to be MOOT.

P.R. Laws Ann. tit. 32, app. III, R. 44.3(b). The First Circuit has held that awards of pre-judgment interest in arbitration cases are discretionary and within the equitable powers of the district court. *Colon-Velez v. P.R. Marine Mgt., Inc.*, 957 F.2d 933, 941 (1st Cir. 1992). It has further held that state law provides the appropriate source for determining the interest rate to be applied. *Id.* In this case, the parties explicitly agreed to settle their disputes through an "expedited" arbitration. That process began more than two and a half years ago, on May 9, 2012. Moreover, this is the *third* forum to which PRTC has unsuccessfully pressed its "jurisdictional" challenges to the arbitration. Those challenges were just as successful here as they were everywhere else, and so they have done little more than render meaningless the 2010 ICA's requirement for expeditious dispute resolution. I therefore find that pre-judgment interest is appropriate to compensate WorldNet for the delay that PRTC has caused. Rule 44.3 provides that interest be calculated at the rate determined by the Office of the Commissioner of Financial Institutions, which currently stands at 4.25%.[13] PRTC

---

**13.** Commissioner of Financial Institutions of Puerto Rico, Interest Rates Payable on Judicial Sentences, available at http://www.ocif.gobierno.pr/tiposinteres_eng.html.

is responsible for interest on the Final Award beginning on its date of issuance, October 24, 2013.

Finally, there is the matter of attorneys' fees. Rule 44.1(d) of Puerto Rico's Rules of Civil Procedure require the imposition of fees against a party "has acted obstinately or frivolously." P.R. Laws Ann. tit. 32, app. III, R. 44.1(d). Here, as noted above, I find that PRTC has been obstinate: it has repeated losing arguments, which it has misclassified as jurisdictional, to this court, despite having previously lost on the same issues in two other fora. Those arguments were, moreover, largely frivolous and involved misconstruing the record of the arbitration. And the claims that PRTC made to this court were ones it had waived on multiple grounds. As such, I conclude that PRTC's primary purpose in filing its motion to vacate the Final Award was further delaying WorldNet's recovery. I therefore find that attorneys' fees and costs are warranted. WorldNet has thirty days to prove its fees in this case; PRTC will have fifteen days to object. These deadlines will not be extended.

## V. Conclusion

For all of the reasons stated above, I DENY PRTC's motion to vacate. I GRANT WorldNet's cross-motion to confirm and FIND MOOT its cross-motion to dismiss. PRTC is further

ORDERED to pay WorldNet's costs and reasonable attorneys' fees incurred in the course of this action, as well as post-award, pre-judgment interest, at a rate of 4.25%, accruing since October 24, 2013. Judgment will follow. *See* 9 U.S.C. § 13 (providing that judgment confirming an arbitration award "shall be docketed as if it was rendered in an action").

     IT IS SO ORDERED.

     In San Juan, Puerto Rico, this 15th day of September, 2014.

<u>S/ SILVIA CARREÑO-COLL</u>

UNITED STATES MAGISTRATE JUDGE